IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JANA G. FAIN                                                                                                    PLAINTIFF


v.                        Civil No. 2:15-cv-2104-PKH-MEF


CAROLYN W. COLVIN, Commissioner
Social Security Administration                                                                      DEFENDANT


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Tina Combs, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.        Procedural Background**

Plaintiff filed her applications for DIB and SSI on November 16, 2011, alleging an amended onset date of July 1, 2010, due to a learning disability, depression, asthma, back problems, and migraine headaches. (Tr. 39, 175-176, 190) The Commissioner denied her applications initially and on reconsideration. At the Plaintiff's request, an Administrative Law Judge ("ALJ") held an administrative hearing on August 7, 2013. (Tr. 32-68) Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 48 years old and possessed a tenth grade education. (Tr. 18, 38)  She had past relevant work ("PRW") experience as a certified nurse aide and housekeeper.  (Tr. 24, 164-174, 191)

On January 3, 2014, the ALJ concluded that the Plaintiff's degenerative joint disease and herniated nucleus pulposus of the lumbar spine, migraines, borderline intellect, major depression, dysthymia, post-traumatic stress disorder, anxiety, insomnia, and mild asthma were severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (Tr. 14)  He then found Plaintiff capable of performing light work with occasional climbing, stooping, crouching, kneeling, and/or crawling, but no balancing or work near ladders or scaffolds.  (Tr. 16)  Further, due to her mental impairments, the ALJ concluded she could perform unskilled or low-semi skilled work involving superficial contact with supervisors, co-workers, and the public and requiring very little reading and/or math skills.  In the alternative, the ALJ also found the Plaintiff capable of performing sedentary work with the ability to alternate between sitting and standing every hour and including the same postural and mental limitations as outlined above.  (Tr. 17)  With the assistance of a vocational expert, the ALJ found the Plaintiff could perform work as a small product assembler, production worker, scale operator, and ceramic tile inspector.  (Tr. 26)

The Appeals Council denied the Plaintiff's request for review on March 30, 2015.  (Tr. 1-4)  Subsequently, Plaintiff filed this action.  (ECF No. 1)  This matter is before the undersigned for report and recommendation.  Both parties have filed appeal briefs, and the case is now ready for decision.  (ECF Nos. 10, 11)

## II.     **Applicable Law**

This court's role is to determine whether substantial evidence supports the Commissioner's findings.  *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011).  We must affirm the ALJ's decision if the record contains substantial evidence to support it.  *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently.  *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision.  *Id.*

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382(3)(c).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial

3

gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982), *abrogated on other grounds by Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. Discussion

Plaintiff raises three issues on appeal: (1) Whether the ALJ's Listing 12.05 analysis is correct; (2) Whether the ALJ properly evaluated Plaintiff's subjective complaints and applied the *Polaski* factors; and, (3) Whether the ALJ's RFC determination is supported by substantial evidence.

#### A. Listing 12.05

Plaintiff contends that the ALJ erred in finding that she did not meet the requirements of an intellectual disability as defined in Listing 12.05. Listing 12.05 states as follows: "Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05A. Paragraph C requires "a valid verbal, performance, or full scale IQ of 60

through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C

The ALJ specifically found "the requirements of paragraph A are met when there is mental incapacity evidenced by dependence upon others for personal needs (*e.g.*, toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded. In this case, these requirements are not met because the claimant has not alleged these limitations." (Tr. 16)  Further, he determined that paragraph C was not met because "there is no other physical or mental impairment imposing an additional and significant work-related limitation of function."  Plaintiff, however, asserts that the ALJ's finding that her degenerative joint disease and herniated nucleus pulposus of the lumbar spine, migraines, major depression, dysthymia, post-traumatic stress disorder, anxiety, insomnia, and mild asthma were severe is in contradiction to this finding.

Under the guidance of *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006), there is no question Plaintiff meets the requirements of paragraph C.  The ALJ's determination that she suffered from other severe impairments, both physical and mental, constitutes a finding of a physical or mental impairment that imposes additional and significant work-related limitations on the Plaintiff's ability to function.  *Id*.  Thus, the real question in this case is whether the Plaintiff meets the requirements of paragraph A.  And, for the purposes of Listing 12.05, "adaptive activities" include cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for grooming and hygiene, using telephones and directories, and using a post office. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00.

Although the Plaintiff did not specifically allege borderline intellectual functioning or mental retardation on her application for disability, she did allege a learning disability. (Tr. 175-

5

176, 190) This was sufficient to notify the ALJ of a potential intellectual deficit and trigger the application of Listing 12.05. While the ALJ's analysis of paragraph A appears to stop with his statement that she did not allege disability due to intellectual functioning, we find that his failure to proceed with further analysis, although in error, does not require remand. A thorough reading of the ALJ's decision reveals the ALJ found the Plaintiff had not shown the required deficits in adaptive functioning needed to establish listing-level mental retardation. *See Buckner v. Astrue*, 646 F.3d 549, 559-560 (8th Cir. 2011) (holding an arguable deficiency in opinion-writing technique does not require us to set aside an administrative finding when that deficiency had no bearing on the outcome).

Plaintiff possessed a tenth grade education and reported a history of resource classes. (Tr. 321) Her eleventh grade year she was reportedly placed in regular classes and "flunked every one of them," so she quit school. (Tr. 321) She never obtained a GED, but Plaintiff did complete an eight-week CNA course and obtain a CNA license. (Tr. 42, 321) It appears that she worked as a CNA for approximately five years. (Tr. 148-149) Although she claimed to have been fired from one CNA position for failure to wear her gloves as required, it appears that her inability to return to her PRW was due to her physical limitations, rather than mental retardation. (Tr. 322) *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (holding Plaintiff's ability to perform work as a CNA, a semiskilled job, for approximately two years undermines her claim of disability due to mental retardation). In fact, while Dr. Robert Spray did conclude that the Plaintiff suffered from borderline intellectual functioning, based on a full-scale IQ score of 70, he also concluded that neither her educational and developmental history nor her deficits in adaptive functioning were consistent with a diagnosis of mental retardation. (Tr. 330) The Court also notes that, aside from Dr. Moskow's assessment of possible mental retardation or borderline intellectual functioning and

Dr. Spray's diagnosis of borderline intellectual functioning, none of the doctors examining the Plaintiff questioned her level of intellectual functioning. Dr. W. Russell Young, whose treatment records date back to at least 2005, documented normal mood, affect, and memory, but never doubted her intellectual abilities. (Tr. 291-298) Further, records from Western Arkansas Counseling and Guidance Center make no reference to her borderline intellectual functioning or possible mental retardation. (Tr. 248-250, 441-447, 456-468) And, while a formal diagnosis of mental retardation is not required to meet the listing, the Court finds Dr. Spray's findings, when coupled with Plaintiff's work history and the absence of diagnoses from the other examining sources in this case, to be compelling evidence that the limitations imposed by Plaintiff's borderline intellectual functioning were not significant enough to meet the listing requirements.

Plaintiff's activities of daily living also fail to establish the level of deficit in adaptive functioning described in Listing 12.05. She indicated that she was living alone[1] and could vacuum, wash dishes by hand, make her own bed, shop in stores with her sister, drive short distances, and prepare simple meals like sandwiches and oatmeal. (Tr. 51-55, 250) Due to this ability to live alone and care for her personal needs without assistance, the Court finds that substantial evidence supports the ALJ's determination that the Plaintiff does not meet the requirements of Listing 12.05.

**B.     Credibility**

Plaintiff also asserts that the ALJ erroneously based his credibility determination on the Plaintiff's lack of treatment and medication. The ALJ is required to consider all the evidence relating to Plaintiff's subject complaints, including: (1) Plaintiff's daily activities; (2) the duration,

---

[1] Prior to her husband's incarceration for molestation of her niece, it does appear that the Plaintiff relied on her husband to perform all of the household chores, prepare meals, and to handle the household finances. (Tr. 242-245, 318-327) However, at the time of the administrative hearing, the Plaintiff was living alone in her sister-in-law's travel trailer. With her sister-in-law's assistance with the laundry and shopping, Plaintiff appeared to be getting by on her own. (Tr. 51-54)

frequency, and intensity of her pain; (3) precipitation and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and, (5) function restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In so doing, the ALJ must also consider the claimant's prior work record, observations made by third parties, and the opinions of treating and examining physicians." *Polaski*, 739 F.2d at 1322.

An ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them. *Id*. However, "[a]n ALJ . . . may disbelieve subjective reports because of inherent inconsistencies or other circumstances." *Wright v. Colvin*, 789 F.3d 847, 853 (8th Cir. 2015) (*citing Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (quotation and citation omitted). The Eighth Circuit has observed, "[o]ur touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

In the present case, the ALJ examined the record and provided good reasons for finding the Plaintiff less than fully credible. He considered the Plaintiff's prior work history and the fact that she was able to perform semi-skilled work as a CNA, in spite of her alleged mental impairments. The ALJ also found that her ability to perform activities of daily living and care for herself contradicted her claim of disability due to mental retardation. (Tr. 19) Further, Plaintiff's failure to seek out and follow through with treatment for her alleged impairments, both mental and physical, undermined her credibility. *See Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (lack of supporting medical evidence is one factor that may be considered in assessing credibility). While we do note that the Plaintiff sought out some treatment for her depression in 2012, after her husband was arrested for molesting her niece, she failed to follow through with treatment as prescribed. (Tr. 248-249, 441-445) In November 2012, a discharge summary revealed that the Plaintiff had not presented for therapy since June, at which time she reported improvement in her

depression, and the counselor noted improved self-care and appearance. (Tr. 19, 456-463) *See Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (a failure to follow a recommended course of treatment weighs against credibility).

The objective evidence of record does indicate that the Plaintiff suffered from degenerative disk disease with x-rays documenting degenerative disk disease of the lower thoracic and upper lumbar spine, indicated by bone spur formation and narrowing of the disk spaces at the L1-L5 levels. Plaintiff, however, had not sought out treatment for her back pain since 2011 or for her asthma since January, 2012. (Tr. 293-294, 429-440) *See Moad v. Massanari*, 260 F.3d 887, 892 (8th Cir. 2001) (in assessing credibility, the court noted Plaintiff had not sought treatment from any physician in the seven months prior to administrative hearing). A consultative physical exam conducted in 2013 did reveal decreased flexion in the lumbar spine, but straight leg raise testing was negative bilaterally, she exhibited normal reflexes and sensation, there was no evidence of muscle spasms or atrophy, and she exhibited a normal range of motion in all other areas. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). Dr. Honghiran did note that her pain would be chronic and would prevent her from performing the lifting, bending, and stooping requirements of her PRW as a CNA. He did not, however, opine that she was unable to perform any and all work related tasks. In addition, despite Plaintiff's allegations of disabling pain, she admitted to taking only over-the-counter medication to treat her pain. (Tr. 41-42) *See Hepp v. Astrue*, 511 F. 3d 798, 807 (8th Cir. 2008) (moderate, over-the-counter medication for pain does not support allegations of disabling pain). Further, the treatment she did receive for her alleged pain was conservative at best, with no suggestion that her condition required surgical correction. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (holding conservative treatment is inconsistent with disability).

Although the Plaintiff insists that her lack of insurance and financial hardship prevented her from obtaining both medical treatment and medication, this is not borne out by the medical record. There is no evidence that Plaintiff investigated community resources for obtaining low-cost medical care, that she was ever denied any medical treatment for her conditions due to poverty or lack of insurance, or that she was prevented from seeking such treatment for any other reason. *See Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005) (failure to take prescription pain medication was relevant to credibility determination where claimant said she could not afford treatment but there was no evidence she was ever denied medical treatment due to financial reasons); *Harris v. Barnhart,* 356 F.3d 926, 930 (8th Cir. 2004) (permissible for ALJ to consider lack of evidence that claimant sought out stronger pain treatment available to indigents for her allegedly debilitating headaches); *Osborne v. Barnhart,* 316 F.3d 809, 812 (8th Cir. 2003) ("lack of insurance" did not excuse claimant's failure to pursue mental health treatment where no evidence that claimant was ever denied such treatment because of insufficient funds or insurance). Therefore, Plaintiff's lack of insurance did not wholly excuse her failure to seek treatment for her allegedly disabling impairments.

### C. RFC Determination

Lastly, the Plaintiff contests the ALJ's physical RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. A disability claimant has the burden of establishing his or her RFC. *Vossen,* 612 F. 3d at 1016. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored

into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller*, 784 F.3d at 479 (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Plaintiff alleges that the ALJ accepted Dr. Honghiran's opinion that she could not perform her PRW, but rejected his opinion as to her functional restrictions. Further, she insists that the ALJ pulled his sedentary RFC "out of thin air from no treating or examining source." While it is true that there must be some medical evidence in the record to support an ALJ's RFC findings, there is no requirement that the ALJ have an RFC assessment in the record that tracks his RFC determination verbatim. As previously stated, the RFC is formulated based on a review of all of the relevant evidence in the record. *See Jones*, 619 F.3d at 971.

In the present case, the ALJ based his assessment on Dr. Honghiran's 2013 consultative exam, the non-examining RFC assessments completed by Drs. Sharon Keith and Jim Takach, records from Dr. W. Russell Young dating back to at least 2005, and an emergency room record.

In addition to the findings described in the preceding section, Dr. Honghiran indicated that the Plaintiff walks normally, has no limp, does not use a cane or crutches, is able to dress and undress herself without help, can get on and off of the exam table, and is able to get up on her tiptoes and heels. As far as an RFC assessment is concerned, Dr. Honghiran did not provide one. He did, however, indicate that lifting, bending, and stooping would aggravate her back condition. In reviewing the ALJ's RFC assessment, we note that these restrictions are accounted for in his determination that the Plaintiff could perform light or sedentary work involving occasional

climbing, stooping, crouching, kneeling, and/or crawling, but no balancing or work near ladders or scaffolds.

In December 2011, Dr. Sharon Keith, a non-examining consultant, reviewed Plaintiff's medical records and concluded that she could perform light work involving occasional balancing, stooping, kneeling, crouching, and crawling with additional environmental limitations. (Tr. 311-317) On May 28, 2012, Dr. Jim Takach reviewed both Dr. Keith's assessment and the record and affirmed Dr. Keith's assessment. (Tr. 359) In so doing, he noted chronic conservative pain management without evidence of neurological deficits, a history of uncomplicated migraines without evidence of marked debilitations, and mild asthma. (Tr. 359)

As for the medical records in evidence, it appears Dr. W. Russell Young had a lengthy treating relationship with the Plaintiff. Records revealed treatment for pain management, asthma, insomnia, and migraine headaches. In August 2010, Dr. Young noted that Albuterol was controlling Plaintiff's asthma and Tramadol was offering "adequate pain control." (Tr. 297-298) At this time, she exhibited a normal mood and affect. Her insomnia remained problematic. Dr. Young prescribed Zolpidem, recommended exercise for weight loss, and advised continuing her current medications. She next presented for treatment in December 2010, at which point she complained of worsening migraines. (Tr. 295-296) Again, Dr. Young noted a normal mood and affect. Due to continued insomnia, he discontinued the Zolpidem and prescribed Trazodone and Amitriptyline. Eight months later, Plaintiff returned with complaints of chronic back pain. (Tr. 293-294) Her mood and affect remained unchanged and she continued to experience headaches. Accordingly, Dr. Young referred her to Dr. Sean Champion for further evaluation of her headaches and physical therapy for her pain.[2] He also prescribed Trazodone, Fioricet, and Tylenol and

---

[2] There is, however, no evidence to indicate that she followed through with either referral.

advised her to continue her other medications. In October 2011, Plaintiff reported depression. (Tr. 291-292) Dr. Young noted that she was tearful and described depression symptoms. He diagnosed depression, insomnia, migraine headaches, asthma, and osteoarthritis and prescribed Prestiq and Xanax. Further, he advised her to continue Trazadone, Amitriptyline, and Fioricet.

Plaintiff received no further treatment for any of her conditions until January, 2012, at which time she presented in the emergency room with complaints of coughing and wheezing. (Tr. 429-440) Coughing reportedly made her dizzy. She was diagnosed with acute bronchitis and prescribed Tylenol with Codeine and Bactrim DS. Aside from the counseling she received at Western Arkansas Counseling and Guidance Center following her husband's arrest and the consultative examinations ordered by the Commissioner, the record contains no further evidence documenting Plaintiff's treatment for her alleged impairments.

Accordingly, the Court finds substantial evidence to support the ALJ's determination that the Plaintiff could perform a limited range of light and/or sedentary work. As detailed above, this determination is supported by Dr. Honghiran's report, x-rays documenting degenerative disk disease in the lumbar and thoracic spine, Plaintiff's medical records revealing conservative treatment and limited objective findings, and the non-examining opinions of Drs. Keith and Takach.

**IV. Conclusion**

Based upon the foregoing, we recommend affirming the Commissioner's decision and dismissing the Plaintiff's complaint with prejudice.

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties**

**that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 3rd day of August, 2016.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE